JOHN BLIM (*PRO HAC VICE PENDING*)
JAY EDELSON (*PRO HAC VICE PENDING*)
MYLES MCGUIRE (*PRO HAC VICE PENDING*)
BLIM & EDELSON, LLC
53 West Jackson Boulevard
Suite 1642
Chicago, Illinois 60604
Telephone: (312) 913-9400
Facsimile: (312) 913-9401

JOHN G. JACOBS (*PRO HAC VICE PENDING*)
BRYAN G. KOLTON (*PRO HAC VICE PENDING*)
THE JACOBS LAW FIRM, CHTD.
122 South Michigan Avenue
Suite 1850
Chicago, Illinois 60603
Telephone: (312) 427-4000
Facsimile: (312) 427-1850

TERRY M. GORDON - SBN 75604
LAW OFFICES OF TERRY M. GORDON
Three Harbor Drive, Suite 317
Sausalito, California 94965
Telephone:    (415) 331-3601
Facsimile:    (415) 331-1225

ATTORNEYS FOR PLAINTIFFS

### IN THE UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICHELLE SIMS, individually and on behalf of a class of similarly situated individuals, | ) ) ) | Case No. |
| Plaintiff, | ) ) ) | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| v. | ) ) ) | |
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, a Delaware general partnership, | ) ) ) | DEMAND FOR JURY TRIAL |
| Defendant. | ) ) ) | **CLASS ACTION** |

**CLASS ACTION COMPLAINT**

Plaintiff Michelle Sims ("Sims"), on behalf of herself, a class and a sub-class of similarly situated individuals, brings this class action against Cellco Partnership d/b/a Verizon Wireless ("Verizon") seeking to stop Verizon's unlawful practice of "recycling" "dirty" cellular telephone numbers, which practice has resulted in unauthorized charges to customers' accounts, and to obtain redress for all persons injured by Verizon's conduct. Plaintiff, for her class action complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE CASE**

1.     In a widespread industry practice little known by those outside the industry, Verizon routinely "recycles" so-called "dirty" telephone numbers to its customers when they sign up for new cellular telephone service.  The numbers are "recycled" in that they were previously owned and/or used by other persons or entities.  The numbers are "dirty" in that they are encumbered with pre-existing billing obligations for products and services authorized to be purchased, if at all, by the previous owners and/or users of those numbers.

2.     Verizon's practice of re-issuing "dirty"  phone numbers has resulted in unauthorized charges being placed on unsuspecting customers' telephone bills, in an illegal practice known as "cramming."  For years, Verizon has systematically, repeatedly and without authorization, placed charges on customers' monthly bills for third-party services (such as ring tones, joke-a-day programs, wallpaper, screensavers and other forms of software provided by third-party vendors) that were never authorized to be purchased by the current owners of the affected phone numbers, (a) in violation of federal statute; (b)  in breach of contract and the duty of good faith and fair dealing, (c) in violation of California Public Utilities Code section 2890 and California Public Utilities Commission Revised

General Order 168, and (d) in violation of California Business and Professions Code sections17200 and 17500 consumer fraud provisions.

3.     Because of Verizon's wrongful actions, Plaintiff seeks on behalf of herself and the class members, money damages, injunctive and declaratory relief, costs, and reasonable attorneys' fees.

## PARTIES

4.     Plaintiff Michelle Sims is a citizen of California.

5.     Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon") is a Delaware general partnership with its principal offices in the State of New Jersey. Its partners include Verizon Communications, Inc., a Delaware corporation with its principal place of business in the State of New York and Vodafone Group Plc, an English public limited company with its principal place of business in England.

6.     Verizon is a leading provider of cellular telephone service in the United States. Verizon does business throughout the United States, including the State of California and this judicial district.

## JURISDICTION

7.     The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331. It also has jurisdiction under section 1332(d), because (a) at least one member of the putative class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under that subsection applies to the instant action. This Court has supplemental jurisdiction over the remaining counts under 28 U.S.C. § 1367.

## VENUE

8.     Venue is proper in this district under 28 U.S.C. §§ 1391 (b) and (c).

**THE PROBLEM OF RECYLYING DIRTY CELL PHONE NUMBERS**

9.      Cell phone customers are assigned unique phone numbers for their phones, just like traditional land-line customers.

10.      However, unlike traditional phones, the increased use of cell phones has given rise to a new industry that provides so-called "mobile content" services such as ringtones,[1] jokes, news, games, and daily horoscopes to cell phone users.   The providers of mobile content (the "mobile content providers") charge for their services and cause such charges to be placed directly on customers' cell phone accounts through their wireless carriers (the "carriers"), such as Verizon.  The carriers then bill and collect such amounts, serving as partners in these transactions, retaining a portion of all revenue that they collect on account of mobile content services.

11.      When used in this way, cell phones accounts function similar to credit card accounts; however, they lack many of the security features of the latter.  In fact, virtually the only information mobile-content providers require in order to add a charge to a cell phone account is the cell phone number itself.

12.      These services generally renew automatically each month and the resulting charges are included on the customer's cell phone bill.

13.      The instant lawsuit flows from what happens when Verizon reissues (or "recycles") a cellular number previously assigned to one of its customers that has been abandoned.  (Customers abandon numbers for many different reasons, e.g. they move to a different area code, they change carriers, they no longer want one of their cell phones, or they want a different phone number.)

14.      Verizon knows that these abandoned numbers are often encumbered with pre-existing subscriptions – thus rendering these numbers "dirty."

---

[1]  A ringtone is simply the sound made by a telephone to indicate an incoming call. The term is most often used to refer to the customizable sounds available on mobile phones.

15.     Nevertheless it has set up procedures wherein the dirty numbers are not "cleansed" of the pre-existing subscriptions.

16.     Thus, when Verizon re-assigns the number to a new customer, Verizon continues to charge the new customer for subscriptions purchased by the old customers.

### THE FACTS RELATING TO THE NAMED PLAINTIFF

17.     On February 8, 2007, Plaintiff visited the store of an authorized Verizon sales representative located in Emeryville, California to purchase new cell phone service for her personal use.

18.     On that same day, in exchange for a Verizon cell phone plan called "InPulse $0.99 Per Day Voice & Data with Unlimited In-Network and Nightime Minutes," Plaintiff agreed to pay Verizon $0.99 per day plus $0.10 per minute per phone call on a rolling pay-as-you-go basis.

19.     Upon purchasing Verizon's cellular telephone services and activation of her cellular telephone account, Verizon provided Plaintiff a cellular phone number of "[redacted]-6912."

20.     Unbeknownst to Plaintiff, Verizon provided her with a recycled "dirty" phone number -- one saddled with pre-existing obligations, encumbrances and billing arrangements for products and services authorized to be purchased, if at all, by the previous owner(s) and/or user(s) of that number.

21.     Thus, beginning on or about February 9, 2007 -- the day after Plaintiff obtained her cell phone number and started receiving service from Verizon -- and continuing through at least February 25, 2007, Plaintiff's cell phone received multiple unwanted "premium" text message calls on a daily basis from a company called SMS.ac, Inc., a third-party provider of text message content.  "Premium" text messages are those that can include various forms of software, such as ring tones.

22.     Throughout the relevant period, Plaintiff estimates she received more than eighty such messages and/or charges.

23.     At no time did Plaintiff authorize the purchase of said products and services offered by SMS.ac and at no time did Plaintiff consent to SMS.ac's sending of text messages to her telephone number.

24.     Throughout the relevant time period, Verizon billed Plaintiff a "Premium SMS" rate of $0.60 for each such unauthorized text message.

25.     Plaintiff's cell phone bill did not identify the entity that sent the messages or the entity that charged her for the text messages.

26.     At no time did Plaintiff authorize Verizon to bill her for said charges.

27.     In or about February, 2007, Plaintiff contacted Verizon to inquire why her bills were so high and was told that it was because of premium text message charges from a company called m-Qube, Inc., who, Plaintiff later learned, was acting on SMS.ac's behalf.

28.     Plaintiff advised Verizon that she did not authorize the purchase of said products and services offered by m-Qube and that at no time did she consent to being sent any of the text messages referred to herein.  Plaintiff then asked Verizon how she could stop being sent these unauthorized messages for which she was being billed by Verizon.

29.     Verizon never offered to remove the unauthorized charges from Plaintiff's bill, never undertook to resolve the dispute to Plaintiff's satisfaction, never verified that Plaintiff had, in fact, provided authorization to purchase products and services offered by m-Qube or SMS.ac, never verified whether Plaintiff had, in fact, provided consent to m-Qube's or SMS.ac's sending of any text messages to her telephone number, and never verified that Plaintiff had, in fact, provided authorization to bill her account for said charges.  Rather, Verizon simply "passed the buck," advising Plaintiff to contact m-Qube.

30.     On multiple occasions thereafter, Plaintiff attempted to contact m-Qube, but was unable to speak directly with anyone at the company who could credit her for such

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1    unauthorized text message charges.  m-Qube later contacted Plaintiff via email to confirm

2    that it was billing her on behalf of its client, SMS.ac, and to advise her that it had forwarded a

3    request to SMS.ac to remove her number from all its services. m-Qube never offered to credit

4    her for the unauthorized charges.

5          31.    SMS.ac was then contacted to obtain further detail regarding the date of

6    Plaintiff's purported authorization to be sent and charged for the premium text messages

7    referred to herein.

8          32.    According to SMS.ac, the purported authorization to be sent and charged for

9    such text messages was obtained from a person identified as "Augustine" with the same

10   phone number eventually assigned by Verizon to Plaintiff; however, the authorization for the

11   subject charges was obtained in December, 2004 – a date *more than two years prior* to the

12   time that Plaintiff first purchased cell phone service from Verizon, obtained that same cell

13   phone number from Verizon, or started receiving Verizon service.

14         33.    Plaintiff could not possibly have authorized the charges for which she was

15   being billed.  She did not have any account with Verizon at that time.   Indeed, for the four

16   years preceding the date Plaintiff opened the account, Plaintiff was out of the country in the

17   United Kingdom.

18                  **ADDITIONAL ALLEGATIONS REGARDING**

19                  **CALIFORNIA  PUBLIC UTILITY CODE**

20         34.    Verizon is a telephone corporation and public utility as defined in California

21   Pub. Util. Code sections 216 and 234 and is certified by the California Public Utilities

22   Commission ("CPUC") to offer, and does in fact offer and sell, mobile cellular

23   telecommunication services throughout the State of California.

24         35.    Verizon's services include providing access to and billing for various third-

25   party services such as ring tones, joke-a-day programs, wallpaper, screensavers and other

26

27

28

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

forms of software provided by numerous third-party vendors with names such as Jamster, m-qube, SMS.ac, and many others.

36.     Verizon has contracted with third-party providers, for a fee, to bill and collect from Verizon's customers for third party services which are included directly on a customer's monthly wireless bill.

37.     Envisioning the potential for abuse, the California Legislature adopted California Public Utilities Code section 2890 which provides, in relevant part, that: "(a) A telephone bill may only contain charges for products or services, the purchase of which the subscriber has authorized."

38.     Public Utilities Code section 2890 was intended to deter the unlawful practice of "cramming," *i.e.*, the placing of unauthorized charges on telephone bills, as defined in the Legislative History of Public Utilities Code sections 2889.9 and 2890:

> ["This bill addresses the problem of 'cramming,' a practice in which consumers are charged for unauthorized services in their phone bills. [¶] ... [¶] A relatively new, and growing, scam on telephone customers is the imposition of charges on the telephone bill for products or services the customer has not bought.... [¶] Often the charges which are 'crammed' on the customer's bill are relatively small, less than $10, and inconspicuously labeled. If one does not carefully scrutinize the telephone bill, the crammed charge could easily be overlooked."]; Sen. Bill No. 378, approved by Governor, Sept. 30, 1998 (Amend.Aug.21, 1998) (1997 1998 Reg. Sess.) [" 'Cramming' charges are usually comprised of services such as unauthorized voice mail options, Internet access options, calling cards, paging services, and 800 numbers. In many cases[,] these unauthorized charges are initiated from sweepstakes, raffles, and telemarketers of unknown and unscrupulous companies."].)

Assem. Bill No. 2142, 3d reading May 7, 1998, Assem. Floor (1997 1998 Reg. Sess.).

39.     According to the CPUC, "the practice of cramming has become a serious and widespread problem in California, draining time and money from California consumers and businesses."

40.     Revised General Order 168, "Market Rules to Empower Telecommunications Consumers and to Prevent Fraud" similarly provides that "Telephone companies may bill subscribers only for authorized charges."

41.     Further, the duty of good faith and fair dealing, a part of every contract, requires that Verizon not bill any customer for any good or service not authorized by the customer.

42.     Upon purchasing Verizon's cellular telephone services and activation of cellular telephone accounts, Verizon provides its customers a cellular telephone number.

43.     As explained above, unbeknownst to its customers, Verizon often "recycles" "dirty" telephone numbers, numbers that were previously owned and/or used by other persons or entities and encumbered with pre-existing billing obligations for products and services authorized to be purchased, if at all, by the previous owners and/or users of said numbers.

44.     Verizon systems routinely provide customers with cellular phone numbers that have not been properly "screened" and scrubbed "clean" so as to ensure that its customers are not adversely affected by the actions, inactions, obligations and/or encumbrances of previous owners and/or users of the telephone numbers.

45.     As a result, Verizon has for years been systematically, repeatedly and without authorization, billing its customers for products and services not authorized to be purchased by those customers.  Indeed, if such purchases were authorized at all, they were authorized by previous owners and/or users of such telephone numbers.  Verizon and third-party service providers have, on information and belief, profited greatly from this practice.

46.     Verizon's unlawful charging is further exacerbated by its failure to strictly comply with various disclosure-related requirements of Public Utilities Code section 2890, making it more difficult for customers to discover the unauthorized charges, realize what their options are, and thereafter dispute said charges.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

47.     Public Utilities Code section 2890(d) provides, in relevant part, as follows:

(d) (1) A billing telephone company shall clearly identify, and use a separate billing section for, each person, corporation, or billing agent that generates a charge on a subscriber's telephone bill.  A billing telephone company may not bill for a person, corporation, or billing agent, unless that person, corporation or billing agent complies with paragraph (2).

(2) Any person, corporation, or billing agent that charges subscribers for products or services on a telephone bill shall do all of the following:

(A) Include, or cause to be included, in the telephone bill the amount being charged for each product or service, including any taxes or surcharges, and a clear and concise description of the service, product, or other offering for which a charge has been imposed.

(B) Include, or cause to be included, for each entity that charges for a product or service, information with regard to how to resolve any dispute about that charge, including the name of the party responsible for generating the charge and a toll free telephone number or other no cost means of contacting the entity responsible for resolving disputes regarding the charge and a description of the manner in which a dispute regarding the charge may be addressed.  Each telephone bill shall include the appropriate telephone number of the commission that a subscriber may use to register a complaint.

48.     Although required to do so, the bills issued by Verizon failed to include information with regard to the entity that charged for the products or services, failed to include descriptions of the service, product, or other offering for which charges had been imposed, failed to indicate how to dispute specific charges, failed to include the name of the party responsible for generating the charge, failed to include a toll-free telephone number or other no-cost means of contacting the entity responsible for resolving disputes regarding the charge and a description of the manner in which a dispute regarding the charge may be addressed.  Verizon's bills also failed to "include the appropriate telephone number of the commission that a subscriber may use to register a complaint," as required by section 2890(d) (2) (b).

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

49.     According to the CPUC, "[t]he obvious purpose of including the Commission's contact information is to safeguard consumers' Rights to Public Participation and Enforcement (consumers have a right to be informed of their rights and what agency enforces those rights) and Accurate Bills and Redress (consumers have a right to fair, prompt and courteous redress for problems they encounter). Without this information, many or most consumers won't realize what their options are."

50.     Public Utilities Code section 2890(e) further requires that "[i]f an entity responsible for generating a charge on a telephone bill receives a complaint from a subscriber that the subscriber did not authorize the purchase of the product or service associated with that charge, the entity, not later than 30 days from the date on which the complaint is received, shall verify the subscriber's authorization of that charge or undertake to resolve the billing dispute to the subscriber's satisfaction."  Verizon systematically failed to adhere to these "cramming" rules in its treatment of Plaintiff and other affected customers.

51.     Pursuant to Public Utilities Code section 2890(d)(2)(D), "[i]f there is a dispute, there is a rebuttable presumption that an unverified charge for a product or service was not authorized by the subscriber and that the subscriber is not responsible for that charge." Plaintiff and the Class dispute said charges and, thus, are entitled to a presumption that said charges were unauthorized.

52.     Verizon's conduct is by no means accidental. As hereinbefore alleged, Verizon knows that the cell phone numbers it issues include numbers previously assigned to former customers; knows that these previously-used numbers often are encumbered with pre-existing subscriptions, and knows, from admitted receipt of customer complaints about billings for pre-existing subscriptions, that among the  numbers it issues are numbers with pre-existing subscriptions.  Despite this knowledge Verizon has not set up procedures to insure that the numbers it assigns to new customers have been cleansed of pre-existing and undisclosed subscriptions.  In light of its knowledge of these facts, Verizon's decision to

1  continue issuing phone numbers without taking any steps to cleanse them constitutes a

2  deliberate and willful scheme to cheat large numbers of people out of small amounts of

3  money.

4        53.  Because the amount Verizon is taking is small on an individual basis – as little

5  as $10 to at most several hundreds of dollars per person -- and because of Verizon's vast

6  resources and superior bargaining power, Verizon employs this scheme with the hope and

7  expectation that its illegal conduct will go unpunished.

8  **CLASS ALLEGATIONS**

9        54.  Plaintiff brings this action, pursuant to Federal Rule of  Civil Procedure

10  23(b)(2) and (b)(3), on behalf of herself and a class consisting of all Verizon wireless

11  telephone subscribers in the nation who suffered losses or damages as a result of Verizon's

12  billing for products and services not authorized by the existing owner of the number (the

13  "Plaintiff Class" or "Class"), but, rather, if at all, by a prior owner or user of the number;

14  provided, however, that the following are excluded from this proposed Class: (i) defendant,

15  and (ii) any employee of defendant.

16        55.  Additionally, Plaintiff brings this action on behalf of a state-wide sub-class

17  (the "Sub-Class") consisting of all members of the Class who entered into subscription

18  contracts within the state of California.

19        56.  The Class and Sub-Class each consists of thousands of individuals and other

20  entities, making joinder impractical, in satisfaction of Rule 23(a)(1).

21        57.  The claims of Plaintiff are typical of the claims of all of the other members of

22  the respective classes.

23        58.  Plaintiff will fairly and adequately represent and protect the interests of the

24  other members of the respective classes.  Plaintiff has retained counsel with substantial

25  experience in prosecuting complex litigation and class actions.  Plaintiff and her counsel are

26  committed to vigorously prosecuting this action on behalf of the other Class members, and

27

28

1    have the financial resources to do so.  Neither Plaintiff nor her counsel have any interest

2    adverse to those of the other Class members.

3        59.    Absent a class action, most Class members would find the cost of litigating

4    their claims to be prohibitive, and will have no effective remedy.  The class treatment of

5    common questions of law and fact is also superior to multiple individual actions or piecemeal

6    litigation in that it conserves the resources of the courts and the litigants, and promotes

7    consistency and efficiency of adjudication.

8        60.    Defendant has acted and failed to act on grounds generally applicable to the

9    Plaintiff and the other members of the respective classes, requiring the Court's imposition of

10   uniform relief to ensure compatible standards of conduct toward the Class members.

11       61.    The factual and legal bases of Defendant's liability to Plaintiff and to the other

12   members of the respective classes are the same, resulting in injury to the plaintiff and to all of

13   the other Class members.  Plaintiff and other Class members have all suffered harm and

14   damages as a result of all of Defendant's unlawful and wrongful conduct.

15       62.    There are many questions of law and fact common to the claims of Plaintiff

16   and the other members of the respective class members, and those questions predominate

17   over any questions that may affect individual Class members within the meaning of Rule

18   23(a)(2) and 23(b)(3).  Common questions for the Class include but are not limited to the

19   following:

20           (a)    Whether Defendant's conduct described herein is "unjust and

21   unreasonable" as specified in 47 U.S.C. § 201(b); and

22           (b)    Whether Defendant's conduct described herein is in breach of contract.

23       63.    Common questions for the Sub-Class include:

24           (a)    Whether Defendant's conduct described herein is in violation of

25   California's Public Utility Code section 2890;

26

27

28

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

(b)     Whether Defendant's conduct described herein violates California Business and Professions Code sections 17200, *et seq*; and

(c)     Whether Defendant's conduct described herein violates California Business and Professions Code sections 17500, *et seq*.

## COUNT I

### (Violation Of 47 U.S.C. § 201 on behalf of the Class)

64.     Plaintiff incorporates the foregoing allegations.

65.     Section 201 of 47 U.S. Code provides in relevant part as follows:

> All charges, practices, classifications, and regulations for and in connection with such communication service [*i.e.*, interstate or foreign communication by wire or radio], shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful . . . .

66.     Verizon's practice of charging Plaintiff and class members for services they never ordered or subscribed to is neither just nor reasonable and is in fact unjust and unreasonable, as set forth in 47 U.S.C. § 201, and violates the said statute.

67.     47 U.S.C. § 206, in turn, provides in relevant part:

> In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful . . . such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee . . . .

68.     Finally, 47 U.S. C. § 207 provides in relevant part that

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may . . . bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction . . .

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**COUNT II**

**(Unauthorized Telephone Charges In Violation Of
California Public Utilities Code § 2890 on behalf of the Sub-Class)**

69.   Plaintiff incorporates by reference the foregoing allegations.

70.   California Public Utilities Code section 2106 provides aggrieved persons the following private right of action:

> Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom.  If the court finds that the act or omission was willful, it may, in addition to the actual damages, award exemplary damages.  An action to recover for such loss, damage, or injury maybe brought in any court of competent jurisdiction by any corporation or person.

71.   In an effort to deter the unlawful practice of "cramming," *i.e.*, the placing of unauthorized charges on telephone bills, the California legislature enacted Public Utilities Code section 2890, which provides, in pertinent part, as follows:

> (a) A telephone bill may only contain charges for products or services, the purchase of which the subscriber has authorized.
>
> (b) When a person or corporation obtains a written order for a product or service, the written order shall be a separate document from any solicitation material.  The sole purpose of the document is to explain the nature and extent of the transaction.  Written orders and written solicitation materials shall be unambiguous, legible, and in a minimum 10 point type.  Written or oral solicitation materials used to obtain an order for a product or service shall be in the same language as the written order.  Written orders may not be used as entry forms for sweepstakes, contests, or any other program that offers prizes or gifts.
>
> (c) The commission may only permit a subscriber's local telephone service to be disconnected for nonpayment of charges relating to the subscriber's basic local exchange telephone service, long distance telephone service within a local access and transport area (intraLATA), long distance

telephone service between local access and transport areas (interLATA), and international telephone service.

(d) (1) A billing telephone company shall clearly identify, and use a separate billing section for, each person, corporation, or billing agent that generates a charge on a subscriber's telephone bill.  A billing telephone company may not bill for a person, corporation, or billing agent, unless that person, corporation or billing agent complies with paragraph (2).

(2) Any person, corporation, or billing agent that charges subscribers for products or services on a telephone bill shall do all of the following:

(A) Include, or cause to be included, in the telephone bill the amount being charged for each product or service, including any taxes or surcharges, and a clear and concise description of the service, product, or other offering for which a charge has been imposed.

(B) Include, or cause to be included, for each entity that charges for a product or service, information with regard to how to resolve any dispute about that charge, including the name of the party responsible for generating the charge and a toll free telephone number or other no cost means of contacting the entity responsible for resolving disputes regarding the charge and a description of the manner in which a dispute regarding the charge may be addressed. Each telephone bill shall include the appropriate telephone number of the commission that a subscriber may use to register a complaint.

(C) Establish, maintain, and staff a toll free telephone number to respond to questions or disputes about its charges and to provide the appropriate addresses to which written questions or complaints may be sent.  The person, corporation, or billing agent that generates a charge may also contract with a third-party, including, but not limited to, the billing telephone corporation, to provide that service on behalf of the person, corporation or billing agent.

(D) Provide a means for expeditiously resolving subscriber disputes over charges for a product or service, the purchase of which was not authorized by the subscriber.  In the case of a dispute, there is a rebuttable presumption that an unverified charge for a product or service was not authorized by the subscriber and that the subscriber is not responsible for that

charge.  With regard to direct dialed telecommunications services, evidence that a call was dialed is prima facie evidence of authorization.  If recurring charges arise from the use of those subscriber initiated services, the recurring charges are subject to this section.

(E) If an entity responsible for generating a charge on a telephone bill receives a complaint from a subscriber that the subscriber did not authorize the purchase of the product or service associated with that charge, the entity, not later than 30 days from the date on which the complaint is received, shall verify the subscriber's authorization of that charge or undertake to resolve the billing dispute to the subscriber's satisfaction.

72.     Defendant violated section 2890 by virtue of its conduct alleged above, including its billing for products or services, the purchase of which Plaintiff never authorized, thereby causing Plaintiff and the members of the class to suffer loss, damage, and injury.

73.     Plaintiff and the Class are entitled to actual damages pursuant to Public Utilities Code section 2106.  Plaintiff and the Sub-Class are further entitled to exemplary damages to the extent the evidence shows that Defendant's violations were willful.

## COUNT III

### (Breach Of Contract on behalf of the Class)

74.     Plaintiff incorporates by reference the foregoing allegations.

75.     Plaintiff entered into agreements with Defendant and the Class whereby Plaintiff and the Class agreed to pay a certain sum of money in exchange for Defendant's activation of Plaintiff and Class members' cellular telephone accounts and its promise to provide various communication and related services to them.

76.     Defendant expressly and/or impliedly agreed to provide Plaintiff and the Class with cellular telephone numbers free of preexisting billing obligations for products and

services ordered, purchased and/or authorized by the previous owners and/or users of said telephone numbers.

77.   Defendant further expressly and/or impliedly agreed to bill Plaintiff and the Class only for products or services the purchase of which they had authorized.

78.   Defendant further expressly and/or impliedly agreed to carry out its obligations in good faith and fair dealing.

79.   Defendant breached its contractual obligations by providing Plaintiff and the Class with phone numbers saddled with pre-existing obligations, encumbrances and billing arrangements for products and services ordered, purchased and/or authorized, if at all, by the previous owners and/or users of said telephone numbers.

80.   Defendant further breached its contractual obligations, including its contractual obligation of good faith and fair dealing, by thereafter billing Plaintiff and the Class for products or services, the purchase of which they never authorized.

81.   Plaintiff and the Class have performed their obligations under the contracts.

82.   The aforementioned breaches of contract have proximately caused the Plaintiff and the Class economic injury and other damages.

## COUNT IV

**(Unlawful, Unfair and Deceptive Business Practices in Violation of California Business & Professions Code § l7200, et seq. on behalf of the Sub-Class)**

83.   Plaintiff incorporates by reference the foregoing allegations.

84.   The Unfair Business Practices Act proscribes unfair business competition and defines same to include any "unfair," "unlawful," or "fraudulent" business act or practice. California Business & Professions Code §17200 *et seq.*

85.   Defendant violated, and continues to violate this proscription through its conduct alleged above, including its unlawful violations of the California Public Utilities Code section 2890, as set forth above in connection with Plaintiff's First Count.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

86.     Defendant, through its acts of unfair competition, has obtained money from Plaintiff and members of the proposed Class.  Plaintiff and the members of the Sub-Class ask that this Court restore this money to them and enjoin Defendant from continuing its illegal practices.

87.     Such conduct is ongoing and continues to this date.  Plaintiff, the Sub-Class members and the general public are therefore entitled to the relief described herein.

**COUNT V**

**(False and Misleading Advertising in Violation of
California Business & Professions Code § l7500, et seq. on behalf of the Sub-Class)**

88.     Plaintiff incorporates by reference the foregoing allegations.

89.     California Business & Professions Code § 17500 provides that:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, any statement, concerning such real or personal property or services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any such person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell such personal property or services, professional or otherwise, so advertised at the price stated therein, or as so advertised.

90.     Defendant violated, and continues to violate this provision by virtue of its conduct alleged above.

91.     Defendant, through its acts of unfair competition, has obtained money from Plaintiff and members of the Sub-Class.  Plaintiff and the members of the Sub-Class ask that

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1    this Court restore this money to them and enjoin Defendant from continuing its illegal

2    practices.

3          92.     Such conduct is ongoing and continues to this date. Plaintiff, the Sub-Class

4    members and the general public are therefore entitled to the relief described herein.

5                         **PRAYER FOR RELIEF**

6         WHEREFORE, Plaintiff Michelle Sims, on behalf of herself and the respective

7    classes, prays for the following relief:

8                  a)      Certify this case as a class action on behalf of the Class and

9               Sub-Class as defined above and appoint Michelle Sims Class Representative,

10             and appoint Jay Edelson and John G. Jacobs, as co-lead counsel;

11                  b)      Declare that the actions of Verizon, as set out above, constitute

12              a breach of contract, and are in violation of 47 U.S.C. § 201, California Public

13             Utilities Code § 2890 and California Business and Professions Code §§17200

14             and 17500;

15                  c)      Enter judgment against Verizon for all economic, monetary,

16             actual, consequential, and compensatory damages caused by Defendant's

17             conduct, and if Defendant's conduct is proved willful, award Plaintiff and the

18             Class exemplary damages;

19                  d)      Award Plaintiff and the Classes reasonable costs and attorneys'

20             fees;

21                  e)      Award Plaintiff and the Classes pre- and post-judgment

22             interest;

23                  f)      Enter judgment for an injunctive and/or declaratory relief as is

24             necessary to protect the interests of Plaintiff and the Classes;

25                  g)      Award such other and further relief as equity and justice may

26             require.

27

28

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1

2

3                                    **JURY DEMAND**

4        Plaintiff requests trial by jury of all claims that can be so tried.

5

6                                              Respectfully submitted,

7   Dated:  March 14, 2007                LAW OFFICES OF TERRY M. GORDON

8

9

10

11                                By:/s/ Terry M. Gordon
                                     _____
12                                   TERRY M. GORDON
                                     One of the Attorneys for Michelle Sims,
13                                   individually and on behalf of a class of
                                     similarly situated individuals

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

JOHN BLIM (*PRO HAC VICE PENDING*)
JAY EDELSON (*PRO HAC VICE PENDING*)
MYLES MCGUIRE (*PRO HAC VICE PENDING*)
BLIM & EDELSON, LLC
53 West Jackson Boulevard
Suite 1642
Chicago, Illinois 60604
Telephone: (312) 913-9400
Facsimile: (312) 913-9401

JOHN G. JACOBS (*PRO HAC VICE PENDING*)
BRYAN G. KOLTON (*PRO HAC VICE PENDING*)
THE JACOBS LAW FIRM, CHTD.
122 South Michigan Avenue
Suite 1850
Chicago, Illinois 60603
Telephone: (312) 427-4000
Facsimile: (312) 427-1850

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**